**Samuel Jr. GILLINS, Plaintiff–Appellant,**

v.

**BERKELEY ELECTRIC COOPER-ATIVE, INCORPORATED, De-fendant–Appellee.**

No. 97–1375.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1998.

Decided July 9, 1998.

**ARGUED:** Joseph Leroy Smalls, Jr., Smalls Law Firm, Columbia, South Carolina, for Appellant. Thomas Edward Schroeder, Smith, Schroeder, Thomas & Means, L.L.P., Charlotte, North Carolina, for Appellee. **ON BRIEF:** W. Britton Smith, Jr., Smith, Schroeder, Thomas & Means, L.L.P., Charlotte, North Carolina; John B. Williams, Moncks Corner, South Carolina, for Appellee.

Before ERVIN and NIEMEYER, Circuit Judges, and BROADWATER, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Judge NIEMEYER and Judge BROADWATER joined.

## OPINION

ERVIN, Circuit Judge:

Samuel Gillins appeals the district court's grant of summary judgment to his employer, Berkeley Electric Cooperative, Inc. ("BEC"), in his Title VII race discrimination claim. *See* 42 U.S.C. § 2000e–2(a)(1) (1994). Gillins claims that BEC temporarily demoted him from his position as a Marketing Representative to a Meter Reader for a two-year period because he is African–American. The district court granted BEC summary judgment because Gillins failed to show any material fact that would demonstrate that BEC's non-discriminatory justification for its decision was, in fact, mere pretext for racial discrimination. Even though Gillins has shown that BEC failed to apply its nondiscriminatory reason consistently as to all its employees, such a showing is insufficient under this Circuit's precedent to survive BEC's motion for summary judgment, and therefore we affirm.

### I.

In March 1987, Gillins was hired at BEC, a rural electric cooperative, as a Meter Reader. In May 1989, Gillins was promoted from Meter Reader to Marketing Representative. A Marketing Representative at BEC performs energy audits at customers' homes in an effort to make the homes more energy efficient. BEC is divided into four geographical districts (Moncks Corner, Goose Creek, Awendaw, and John's Island), and each district has its own Marketing Representative. Gillins was the Marketing Representative in the Moncks Corner district.

In March 1993, BEC learned that one of the area's largest employers, Charleston Navy base, was scheduled to be shut down. Because of the loss of membership that

would result from closure of the Navy base, BEC instituted a partial hiring freeze. Under the hiring freeze, BEC would avoid layoffs by moving current employees in "nonessential positions" to cover vacant, "essential positions," rather than hiring new personnel from outside the company. BEC determined that the four Marketing Representatives were nonessential positions, and the Representatives were subject to being moved to essential positions, including the position of Meter Reader, as needed under the partial hiring freeze.

In July 1994, two Meter Reader positions were vacant in the Moncks Corner district and BEC decided to consolidate the positions and transfer one of its Marketing Representatives to that position pursuant to the partial hiring freeze. At that time, the Marketing Representatives were Karen Smith (Goose Creek), Sam Gillins (Moncks Corner), Adam Hempton (John's Island), and Harvey Beach (Awendaw). This list ranks the Marketing Representatives in order of workload; Karen Smith had the busiest workload while Harvey Beach had the lightest schedule.

BEC decided that it would demote Marketing Representatives based on the strength of their workload. Beach was therefore assigned to work as the Meter Reader in the Moncks Corner office. Beach, however, was only in that position for two weeks. He was transferred back to his job as Marketing Representative after complaining that he was terrified of dogs and frequently encountered them in his work as a Meter Reader. BEC then planned to transfer Hempton, the Marketing Representative next in line, to the Moncks Corner Meter Reader position. Before the transfer was finalized, however, Hempton's supervisor petitioned BEC upper management not to transfer Hempton because of his familiarity with the unique characteristics of homes in his district and because the commute to the Moncks Corner office was greater than one hour in each direction. BEC upper management agreed and decided not to transfer Hempton.

Because he was the Marketing Representative next in line to be demoted, was already working in the Moncks Corner office, and already had experience as a Meter Reader,

Gillins was demoted to the Meter Reader position in July 1994. This demotion resulted in different job duties, responsibilities, and conditions of employment, although not a decrease in pay.

Gillins spent nearly two years in the Meter Reader position. BEC began restoring some of Gillins's duties as Marketing Representative in March 1996 (according to BEC, a "partial retransfer") and Gillins was permanently reinstated as a Marketing Representative in June 1996. During the same month, Gillins filed this action against BEC alleging employment discrimination based on race. A magistrate judge granted BEC's motion for summary judgment and that decision was ratified by the district court.

## II.

The district court's summary judgment is a final order over which this court has jurisdiction pursuant to 28 U.S.C. § 1291 (1994). In reviewing a grant of summary judgment, the Fourth Circuit applies the same standards as the district court and the scope of review is *de novo*. *Ramos v. Southern Maryland Elec. Coop., Inc.*, 996 F.2d 52, 53 (4th Cir.1993); *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990). On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.

The burden-shifting framework of a Title VII case is a familiar one. Gillins must first make out a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). After Gillins establishes a *prima facie* case, the burden of production shifts to BEC to articulate a legitimate, nondiscriminatory reason for Gillins's demotion. *See id.* The burden then shifts back to Gillins to demonstrate that BEC's stated reason was merely pretextual and that it was motivated, in fact, by a discriminatory purpose. *See St.*

*Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." (emphasis omitted)).

BEC concedes, or is willing to assume, that Gillins has stated a *prima facie* case of race discrimination. *See Appellee's Br.* at 12. In response, BEC offers a two-pronged nondiscriminatory reason for Gillins's temporary demotion to Meter Reader: (1) the partial hiring freeze required that a BEC employee in a nonessential position be reassigned to the Meter Reader position, and (2) Gillins was selected, pursuant to the partial hiring freeze, on the basis of the relative amount of workload for the four Marketing Representatives.

Gillins argues in his brief that this is not a "legitimate" nondiscriminatory reason and that BEC therefore has not met its burden of production on this issue. Gillins, however, makes too much of BEC's burden at this stage: under the *McDonnell Douglas* burden-shifting scheme, a defendant is required to respond to the *prima facie* case by "merely articulating" a nondiscriminatory criterion. *See Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). Gillins's attacks on BEC's articulated, nondiscriminatory reason are properly considered as evidence of pretext rather than as a consideration of whether the articulated reason is "legitimate."

■ Pretext can be proven in situations in which an employer's nondiscriminatory reason for its adverse employment action has not been applied to persons outside the plaintiff's protected group. *See Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1381 n. 6 (10th Cir.1994). Gillins presents a convincing argument that BEC did not consistently apply its partial hiring freeze, the nondiscriminatory criterion upon which BEC relies to explain its decision to demote Gillins, to every essential position that became vacant.

The record indicates that in March 1994, four months before Gillins was demoted to the Meter Reader position in Moncks Corner, the same need for a Meter Reader arose in the John's Island office. While Gillins was being demoted to the Meter Reader position at Moncks Corner pursuant to the partial hiring freeze, BEC went outside the company and hired a new employee, Travis Stutts, to fill the John's Island Meter Reader vacancy. This evidence raises an issue of fact as to whether BEC's proffered nondiscriminatory justification is pretextual: Why did BEC deviate from its partial hiring freeze at John's Island, hiring Stutts from outside the office, and not at Moncks Corner, where BEC demoted Gillins?

Furthermore, when Stutts was fired as Meter Reader in John's Island in September 1995, BEC *again* went outside the company, in violation of its alleged partial hiring freeze, to hire a new Meter Reader. BEC does not dispute this fact, but points out that when it filled the vacant Meter Reader position in John's Island in March 1996, it was "in the process of hiring" a new employee to replace Gillins in Moncks Corner. *See Appellee's Br.* at 19–20. Perhaps we are to infer from this argument that BEC was "in the process" of lifting the partial hiring freeze although, curiously, BEC does not say so directly in its brief. On BEC's motion for summary judgment, however, any permissible inferences must be drawn in Gillins's favor and therefore we assume that the partial hiring freeze was still in effect when BEC, for a second time, hired from outside the company at John's Island and not at Moncks Corner.

■ While this evidence establishes "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived," *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), it is not in itself sufficient, under this Circuit's precedents, to survive BEC's motion for summary judgment. This court has adopted what is best described as the "pretext-plus" standard for summary judgment in employment discrimination cases. *See Vaughan v. Metrahealth Companies, Inc.,* 145 F.3d 197, 201–02 (4th Cir.1998).*

---

\* While *Vaughan* involved an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (1994), its analysis of the *McDonnell Douglas* burden-shifting scheme ap-

[T]o survive a motion for summary judgment under the *McDonnell Douglas* paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action.

*Vaughan,* 145 F.3d at 201–02

■ Under *Vaughan,* Gillins must make a two-pronged showing in order to survive BEC's motion for summary judgment: he must adduce sufficient evidence both that the proffered, nondiscriminatory reason is false *and* that race discrimination is the "real reason" for his temporary demotion. *See id.* While Gillins creates a genuine issue of material fact on the first prong, he has not presented any evidence on the second.

There is simply no evidence in the record to suggest that BEC demoted Gillins because he is African–American. Before Gillins was demoted to Meter Reader, BEC attempted to put two other Marketing Representatives (Beach and Hempton) in that position, both of whom are white. Because of his fear of dogs, however, Beach lasted only two weeks as a Meter Reader. Hempton was then transferred to the Meter Reader position before Gillins, although Hempton's transfer was rescinded before he ever started because of his specialized knowledge of homes in the John's Island district and the lengthy commute that this temporary transfer would create.

In his brief, Gillins argues that these decisions are suspicious because they may have no basis in fact—that Beach is not really afraid of dogs and that Hempton possesses no specialized knowledge regarding the homes on John's Island. Even if we assume that Gillins is correct, however, it makes no difference because creating a suspicion that BEC's reasons for its actions are not credible is not enough to survive summary judgment. Gillins's evidence must also raise a suspicion that race discrimination was at play in BEC's decisionmaking, a suspicion that is completely absent from Gillins's argument and the record before us. The evidence demonstrates that BEC attempted to demote Gillins's white colleagues to the Meter Reader position before it decided to place him in that position, and no evidence exists to support the idea that Gillins was temporarily demoted "because of" his race.

**IV.**

Because there is no genuine issue of material fact whether race discrimination was the real reason for Gillins's temporary demotion, the district court properly granted summary judgment to his employer. The judgment of the district court is accordingly affirmed.

*AFFIRMED.*

plies with equal force to claims for employment discrimination under Title VII.