**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1300**

ADESINA A. MERCER,

              Plaintiff - Appellant,

      v.

THE ARC OF PRINCE GEORGES COUNTY, INC.,

              Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Deborah K. Chasanow, Chief District
Judge.  (8:12-cv-00306-DKC)

Submitted:  July 1, 2013              Decided:  July 11, 2013

Before DUNCAN, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Kevin M. Plessner, LAW OFFICE OF KEVIN M. PLESSNER, Linthicum,
Maryland, for Appellant.   John S. Vander Woude, Eric M.
Rigatuso, ECCLESTON & WOLF, P.C., Hanover, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Adesina A. Mercer appeals the district court's grant of summary judgment to her former employer, The Arc of Prince George's County, Inc., (hereinafter "The Arc"), on her claims for interference and retaliation, in violation of The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. For the reasons set forth below, we affirm.

I.

The Arc is a private non-profit organization in Maryland that provides programs and services to individuals with developmental disabilities. The Arc employed Mercer as a full-time Finance and Benefits Coordinator in July 2004, a position she held until The Arc terminated her employment in March 2011. Mercer's job responsibilities included "applying for and processing initial applications for benefits for [The Arc's clients] under the Food Stamp Program and Social Security," as well as "apply[ing] for and process[ing] renewals and redeterminations for benefits under these programs." (J.A. 15-16.)

In May 2007, The Arc placed Mercer on conditional employment status due to poor work performance and time management. It returned her to regular status the following month.

2

While Mercer was on medical leave in the spring of 2009, Mercer's co-workers performed her responsibilities and discovered that many of The Arc's food-stamp-eligible clients were no longer receiving benefits. When Mercer returned to work, she was instructed to ensure that the necessary paperwork was submitted to renew those clients' benefits.

In October 2010, The Arc performed Mercer's annual review. She received marks indicating "satisfactory" performance – twos on a four-point scale – on thirteen of the fourteen categories, and "above average" (a 3) on one category. (J.A. 35-36.) In November and December 2010, The Arc again learned that some food-stamp-eligible clients were no longer receiving those benefits. Mercer was given a list of each of those clients and was instructed to pursue reinstatement of those benefits. Mercer describes this correspondence as "routine communications that are not reprimands" due to clients' benefits frequently lapsing for brief periods while the requisite documentation was being compiled. (J.A. 33.)

In January 2011, Mercer was involved in an automobile accident that left her severely injured and unable to work. She took FMLA leave from January 31 until February 22. While Mercer was on leave, Mercer's co-workers performed her job responsibilities. In the process of doing so, they discovered and told supervisors at The Arc that many more eligible clients

3

were no longer receiving benefits due to Mercer's failure to submit renewal or redetermination requests over an extended period of time prior to her taking FMLA leave.

When Mercer returned to work on February 22, she was immediately placed on administrative leave "due to unsatisfactory job performance and incomplete paperwork" while The Arc performed further investigation into the problem. (J.A. 28.) At the end of the five-day administrative leave period, Mercer took additional FMLA leave to March 14.

During the course of The Arc's investigation, it determined that Mercer "had grossly deviated from her job's requirements by failing to obtain and maintain Food Stamp benefits for 99 of the 160 [eligible clients of The Arc]." (J.A. 17.) On March 23, 2011, The Arc notified Mercer by letter that it was terminating her employment "due to unsatisfactory job performance" and that she was "considered not in good standing and [was] ineligible for rehire."[1] (J.A. 31.)

Mercer filed a complaint in the United States District Court for the District of Maryland alleging that the termination

---

[1] Mercer contends she received this letter while still on FMLA leave. The record only indicates that she requested FMLA leave through March 14. It is not clear whether she was still on leave at this time or not, but for purposes of our review on summary judgment, we will assume she was still on FMLA leave at the time of her termination of employment.

4

of her employment constituted unlawful interference with and retaliation against the exercise of her rights under the FMLA.[2] She sought, inter alia, declaratory and injunctive relief, including reinstatement and damages for back pay and lost benefits.

The Arc moved to dismiss for failure to state a claim, or, in the alternative, for summary judgment. The record before the court included Mercer's job description from when she was hired in 2004, several documents relating to job performance including Mercer's October 2010 performance review, documents Mercer submitted for purposes of taking FMLA leave, the February 2011 letter placing Mercer on administrative leave, and the March 2011 letter terminating Mercer's employment. Each party also submitted one affidavit. The Arc's Human Resources Director, Audrey Weaver, described Mercer's employment with The Arc, her FMLA leave, The Arc's discovery of "unopened and unprocessed redeterminations discovered in [Mercer's] office," the decision to place her on administrative leave pending an investigation, the conclusions The Arc reached as a result of that investigation, and the decision to terminate Mercer's employment. (J.A. 15-18.) Mercer's affidavit described her

---

[2] The complaint also alleged retaliatory discharge in violation of state public policy, but Mercer voluntarily dismissed that claim.

5

taking FMLA leave, stated that she had "always received positive performance evaluations," denied that she failed to perform her job adequately, explained why she was not responsible for "routine . . . lapse[s] in [clients] receiving Food Stamp benefits," and stated that she had not been told about the specific reasons why she was placed on administrative leave and then fired until after the decisions had been made. (J.A. 32-34.)

The district court granted The Arc's motion for summary judgment on both FMLA claims. The court concluded that the undisputed evidence showed that Mercer was entitled to take FMLA leave and also that she "failed to perform her duties satisfactorily before she took that leave." (J.A. 47.) Thus, because Mercer would not have been entitled to keep her job even had she not taken FMLA leave, she could not show that The Arc interfered with her FMLA rights. Turning to Mercer's retaliation claim, the district court concluded that Mercer failed to establish that The Arc's proffered explanation for her termination of employment was pretext for FMLA retaliation.

Mercer noted a timely appeal and we have jurisdiction under 28 U.S.C. § 1291.

6

II.

We review the district court's grant of summary judgment de novo. Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).[3] Accordingly, we view "all facts and reasonable inferences in the light most favorable to" Mercer, Purnell, 652 F.3d at 531, in order to determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in

---

[3] Throughout her opening brief, Mercer challenges the district court's judgment by referring to legal principles applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). While The Arc moved for both dismissal under Rule 12(b)(6) and for summary judgment, the district court ruled on and decided this case solely on The Arc's motion for summary judgment. Accordingly, the principles applicable to Rule 12(b)(6) motions, including the "plausibility" of Mercer's claims applying the analysis of Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), are irrelevant to determining whether the district court appropriately granted The Arc summary judgment. Similarly, we apply the standards applicable to summary judgment and rely not on the allegations in the complaint but on the materials in the record, viewed in the light most favorable to Mercer. See Fed. R. Civ. Pro. 56(c); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (discussing difference between motion to dismiss analysis and summary judgment analysis); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-55 (1986) (discussing summary judgment analysis).

7

support of [Mercer's] position will be insufficient; there must be evidence on which the jury could reasonably find for [her]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

III.

Mercer raises three central arguments in this appeal. First, that the district court erred in dismissing her interference claim because a genuine issue of material fact exists as to whether she was entitled to reinstatement upon her return from FMLA leave. Second, that the district court erred in dismissing her retaliation claim because a genuine issue of material fact exists with respect to whether The Arc's proffered explanation for its decision was pretext for terminating her employment due to taking FMLA leave. And, third, that the district court erred in dismissing Mercer's complaint prior to affording her the opportunity to conduct discovery. We address each argument in turn.

A.

The FMLA allows certain employees to take "12 work weeks of leave" during a twelve-month period for a qualifying health condition that makes the employee "unable to perform the functions of" her job. 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny

8

the exercise of or the attempt to exercise, any right provided under" the FMLA, 29 U.S.C. § 2615, and an employee has a cause of action against her employer under § 2617 when she can prove the employer interfered with her exercise of FMLA rights and caused prejudice thereby. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). However, "the FMLA does not require an employee to be restored to his prior job after FMLA leave if he would have been discharged had he not taken leave." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 547 (4th Cir. 2006) (citing 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period.")).

Mercer contends the district court erred in dismissing her FMLA interference claim because a genuine issue of material fact exists as to whether she would have been terminated from her employment if she had not taken FMLA leave. In support of her argument, Mercer points to her favorable performance reviews up to and including in October 2010; she questions The Arc's affiant Audrey Weaver's knowledge of her employment history and job performance; she describes her job responsibilities and asserts that she adequately performed her work; she explains why occasional lapses in clients' benefits were "routine," and not attributable to poor performance on her part; and she contends

9

she did not learn the specific grounds for The Arc's decision until well after she was notified her employment was terminated.

Mercer's arguments lack support in the record. As noted, being on FMLA leave does not provide an employee any greater rights than he or she would have had without taking leave, and an employee's right to reinstatement is not absolute. Id. at 549; 29 C.F.R. § 825.216(a). An employer has discretion to discipline or terminate the employment of an at-will employee for poor performance regardless of whether the employer's reason for terminating the employment was discovered while the employee is taking FMLA leave. See e.g., Yashenko, 446 F.3d at 549-50 (holding that an employer does not interfere with the exercise of FMLA rights where it reorganizes during an employee's leave and eliminates that employee's position as a result of legitimate non-FMLA leave concerns); Laing v. Fed. Express Corp., 703 F.3d 713, 723-24 (4th Cir. 2013) ("[T]he FMLA does not preclude an employer from placing an employee on an investigatory suspension upon her return from [FMLA] leave if it would have taken the same action had the employee never taken leave in the first place."); Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 680-81 (7th Cir. 1997) (holding that an employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA

10

for an approved purpose); see also Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 977 (8th Cir. 2005) ("The FMLA simply does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave."). While Mercer's poor performance may not have been known to The Arc absent her FMLA leave period, we agree with the Seventh Circuit that "[t]he fact that the leave permitted the employer to discover the problems [with an employee's performance] can not logically be a bar to the employer's ability to fire the deficient employee." Kohls v. Beverly Enters. Wis., Inc., 259 F.3d 799, 806 (7th Cir. 2001).[4] Thus, the fact that Mercer had previously received satisfactory performance reviews does not negate The Arc's ability to terminate her employment upon the discovery of previously unknown poor performance. This is so even if The Arc discovered the basis for terminating Mercer's employment while she was on FMLA leave.

None of Mercer's contentions create a genuine issue of material fact as to the reason why The Arc terminated her employment. The Arc has provided evidence that it would have

---

[4] We have not yet held which party bears the burden of proof in an FMLA interference claim; however, once again we need not resolve that issue here because, regardless of who bears the burden, Mercer's claim cannot succeed. See Yashenko, 446 F.3d at 549 (discussing circuit split on this issue).

11

terminated Mercer for poor performance regardless of her FMLA leave, and Mercer has not presented evidence that would allow a jury to conclude otherwise. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("In ruling upon a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from assuming that general averments embrace the specific facts needed to sustain the complaint. [Rule 56] provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") (internal quotation marks omitted). Mercer's primary basis for connecting the termination of her employment to her FMLA leave is its timing. While timing is a relevant factor, it will rarely be independently sufficient to create a triable issue of fact. See Simpson v. Office of the Chief Judge of the Cir. Ct., 559 F.3d 706, 713 (7th Cir. 2009) ("Temporal proximity between an adverse employment action and a plaintiff's exercise of her statutory rights will rarely be sufficient in and of itself to create a triable issue."). Mercer also

12

speculates that The Arc's proffered reason is not the real reason it terminated her employment, offering her own view that her performance was adequate and explaining that she was not responsible for any lapses in clients' benefits that occurred. However, Mercer's subjective view of her job performance is not sufficient to survive summary judgment. As we have often held, a

> nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another. Rather, a nonmoving party must produce some evidence (more than a "scintilla") upon which a jury could properly find a verdict for the party producing it, upon whom the onus of proof is imposed.

Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (internal citation and quotation marks omitted); see also Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge.") (internal quotation marks omitted). The district court thus did not err in granting The Arc summary judgment on Mercer's FMLA interference claim.

B.

Turning to Mercer's FMLA retaliation claim, we have previously recognized that because such claims are analogous to

13

Title VII retaliation claims, they can be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973). Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 1998). Mercer bears the burden of making a prima facie showing "that [s]he engaged in protected activity, that [Mercer] took adverse action against [her], and that the adverse action was causally connected to [her] protected activity." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). If she makes this prima facie showing, then The Arc bears the burden of offering a non-discriminatory explanation for its decision to terminate Mercer's employment, and thereafter the burden would return to Mercer to show that The Arc's "proffered explanation is pretext for FMLA retaliation." Nichols, 251 F.3d at 502.

Here, Mercer made a prima facie showing because she took FMLA leave (a protected activity), The Arc terminated her employment (the adverse action), and – given the less onerous burden of making the prima facie case – the closeness in time between the two events demonstrates the requisite causal connection between the two events. See Yashenko, 447 F.3d at 551 ("While evidence as to closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'").

14

The district court held that The Arc "presented undisputed evidence that it fired [Mercer] for her unsatisfactory work performance," and that Mercer had "not satisfied her burden to establish that [The Arc's] proffered explanation is pretext for FMLA retaliation." (J.A. 48 (internal quotation marks omitted).) Mercer challenges that conclusion on several grounds.

At the outset, Mercer contends that the district court erred by "not consider[ing] or even mention[ing] any of" her evidence contradicting The Arc's allegations as to her poor performance. (Appellant's Opening Br. 38.) On this factual point Mercer is simply incorrect. The district court's opinion delineates the proper standard of review for summary judgment, recites the largely uncontested facts in Mercer's favor, and it expressly quotes and cites Mercer's affidavit as part of its analysis. (E.g., J.A. 43, 45.) There is no basis on this record to believe the district court ignored Mercer's evidence in deciding the case.

Next, Mercer contends that the district court erred in concluding she had not demonstrated pretext because she "presented evidence that raised beyond a level of speculation the likelihood that [The Arc's] stated reasons for terminating [Mercer] was a pretext for FMLA . . . retaliation." (Appellant's Opening Br. 53.) As support, she points to the

15

timing of her leave and the termination of her employment, her prior satisfactory performance reviews, purported shifts in The Arc's explanation for why it was terminating her employment, and her own assessment that she adequately performed her job and was not responsible for any lapses in clients' benefits.

Mercer has failed to show the district court erred in holding that she had not demonstrated pretext. As discussed in the context of Mercer's interference claim, while timing is a factor in assessing whether an employer's explanation is pretextual, it is not usually independently sufficient to create a triable issue of fact. See Simpson, 559 F.3d at 713. Similarly, the fact that Mercer received satisfactory performance reviews prior to her FMLA leave is not sufficient to create a genuine issue of material fact in this case. The Arc points to evidence it learned after Mercer's most recent performance review as the performance-related reason for its decision to terminate her employment. The Arc's assessment of her performance prior to it learning this new information does not call into question the legitimacy of its proffered explanation.

Nor can Mercer demonstrate the inference of pretext arising from "shifting justifications" given for The Arc's decision to terminate her employment. This Court has recognized that an employer's giving different justifications at different times

was probative of pretext, particularly where those reasons were "arguably inconsistent explanations" "developed over time to counter the evidence suggesting discrimination." E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001). But the record does not support such an inference in this case. While the words used have varied and the examples given have become more specific than Mercer's initial temporary administrative leave letter, the reason The Arc has provided from that point to her termination of employment letter through litigation has been consistent. On February 22, 2011, The Arc placed Mercer on administrative leave "due to unsatisfactory job performance and incomplete paperwork." (J.A. 28.) The March 23, 2011 letter terminating Mercer's employment cited "unsatisfactory job performance." (J.A. 31.) And The Arc's human resources director provided an affidavit accompanying the motion for summary judgment alleging in greater detail the basis for its investigation into Mercer's job performance and its conclusion that she "had grossly deviated from her job's requirements by failing to obtain and maintain Food Stamp benefits for 99 of the 160 [clients] in [The Arc's] program." (J.A. 17.) This record does not support Mercer's contention that an inference of pretext can be drawn in this case.

Lastly, Mercer points to her own assessment of her job performance, what The Arc's legitimate expectations of her

17

should have been, and the nature of renewing client benefits as reasons why the Court should view The Arc's proffered rationale for its decision to terminate her employment as pretext. In reviewing whether an employer's decision is unlawful, the Court's task is not "to decide whether the reason [for termination of employment] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision]." Laing, 703 F.3d at 722 (internal quotation marks omitted). On this point, Mercer's affidavit does no more than demonstrate "the unexceptional fact that she disagrees with the outcome of [The Arc's] investigation." Id. It does not prove that The Arc's investigation or proffered reason for deciding to terminate her employment was not the real reason for its action. See id. Consequently, Mercer's evidence does not create a genuine issue of material fact as to whether The Arc's proffered explanation for terminating her employment was merely pretext for retaliation.

C.

The final issue Mercer raises on appeal is that the district court erred in dismissing her claims before she had the opportunity to conduct discovery. She asserts that because she "alleged sufficient facts to support her claims [she] should be allowed the opportunity to conduct discovery in order to test

18

the veracity of [the witness's] statements and to investigate all of the facts of this case." (Appellant's Opening Br. 55.)

Mercer is correct that summary judgment is generally "appropriate only after adequate time for discovery." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). We have previously indicated that we "place great weight on the [Federal Rule of Civil Procedure] Rule [56(d)] affidavit, believing that a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule [56(d)] to set out reasons for the need for discovery in an affidavit." Id. at 961 (internal quotations marks omitted).[5] The district court record shows that Mercer failed to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) providing specific reasons why discovery was necessary in order to adequately oppose The Arc's motion for summary judgment. And while Mercer's memorandum opposing summary judgment devoted the equivalent of one page asserting that more discovery was needed

---

[5] Former Federal Rule of Civil Procedure 56(f) is now located at Federal Rule of Civil Procedure 56(d). The provision states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

prior to the Court deciding the case, it failed to identify any information that she believed would be adduced at discovery. Far from providing any "specific reasons" why discovery was necessary, the memorandum simply sought to "investigate all of the facts of this case" before the district court ruled on The Arc's motions. (Dist. Ct. Docket No. 4, p. 20.) As in Evans, this minimal "effort is insufficient to compel denial of [The Arc's] summary judgment motion." 80 F.3d at 961. The district court thus did not err in ruling on the summary judgment motion prior to discovery.

IV.

For the aforementioned reasons, we affirm the judgment of the district court granting summary judgment to The Arc. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED